# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 3, 2010

## STATE OF TENNESSEE v. SIRON S. SHIELDS

### Direct Appeal from the Circuit Court for Madison County
### No. 09-374    Roger Page, Judge

---

### No. W2010-00041-CCA-R3-CD  - Filed November 16, 2010

---

The defendant, Siron S. Shields, appeals the revocation of his community corrections sentence, claiming that the trial court erred by revoking his community corrections sentence and ordering him to serve his original sentence in the Tennessee Department of Correction. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

Paul E. Meyers, Jackson, Tennessee, for the appellant, Siron S. Shields.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; James G. Woodall, District Attorney General; and James W. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

On July 15, 2009, the defendant, Siron S. Shields, pleaded guilty to one count of possession of cocaine with intent to sell or deliver and one count of misdemeanor marijuana possession. The plea agreement provided that the defendant would serve a sentence of eight years in the Madison County Department of Community Corrections. On October 7, 2009, the defendant's community corrections case officer filed an affidavit alleging that the defendant had failed to: (1) notify him of an address change; (2) pay court costs as ordered; (3) maintain full-time employment; (4) and complete an alcohol and drug assessment. The

court issued a violation of community corrections warrant and held a revocation hearing on December 18, 2009.

At the hearing, Joe Fuentes testified that he was a case officer for the Madison County Department of Community Corrections, and he supervised the defendant's community corrections sentence. Mr. Fuentes stated that the defendant violated some conditions of his community corrections sentence. First, he said that the defendant did not comply with the condition regarding payment of court costs. The court ordered that the defendant start paying his court costs on August 19, 2009, and the defendant had not yet made any payments. The defendant did, however, make some of his supervision fee payments. Second, the defendant was to obtain and maintain full-time employment or be a full-time student as a condition of his community corrections sentence. Mr. Fuentes testified that the defendant violated this provision. Mr. Fuentes had asked the defendant to show him proof of employment, such as a paycheck stub, but the defendant never complied. The conditions of his sentence also required that the defendant show Mr. Fuentes proof that he attempted to find a job, and the defendant never supplied such proof. The third condition of the community corrections sentence that Mr. Fuentes testified the petitioner violated was that the defendant had to undergo an alcohol and drug assessment. Mr. Fuentes told the defendant that he could sign up for the assessment at the department of corrections office, but the defendant never signed up for the assessment. Finally, as a condition of his community corrections sentence, the defendant was to notify his case officer if he changed residences. Mr. Fuentes testified that he believed the defendant violated this condition because he knew of two possible addresses for the defendant. Mr. Fuentes was aware that the Jackson Police Department conducted a search of a residence at 26 Lennon Cove in Jackson, Tennessee, and discovered evidence that the defendant had resided there. According to Mr. Fuentes, the defendant did not notify him that he had resided at 26 Lennon Cove.

On cross-examination, Mr. Fuentes testified that he began to supervise the defendant in July 2009, and he filed the violation warrant on October 7, 2009. Mr. Fuentes said that the defendant had only been on probation for one month before the court scheduled him to make his first payment toward court costs. The defendant had been on probation for three months before the court issued the violation warrant, and Mr. Fuentes agreed that falling three months behind on the payment of court costs was common for probationers. Mr. Fuentes stated that whether he would violate a probationer who was three months behind in paying court costs depended on how much the probationer owed. According to Mr. Fuentes, not all probationers are employed, and finding jobs is hard for probationers. He agreed that finding a job was extremely hard for probationers with a felony on their record, and he suspected that it would take longer than a couple of months for probationers to find jobs. He stated that paying court costs and fines would be hard for probationers without a job. Regarding the defendant changing his address, Mr. Fuentes said that it would have been

acceptable for the defendant to live at a residence at which he lived before his community corrections sentence.

Investigator Terry Buckley, with the Violent Crimes Unit of the Jackson Police Department, testified that on October 5, 2009, he participated in the execution of a search warrant at 26 Lennon Cove in Jackson, Tennessee. During the search, he found a firearm, wrapped in a blue bandana, inside a cardboard box in the closet of a back bedroom. The bedroom, which was "full of" men's clothing, was next to the kitchen. Investigator Buckley found the defendant's appointment slip for the Madison County Department of Community Corrections attached to the refrigerator with a magnet. Investigator Buckley spoke with the resident at that address, Ms. Miller, who is the defendant's sister. Ms. Miller told Investigator Buckley that the bedroom had belonged to the defendant, but he had moved out approximately one week before the investigators executed the warrant.

On cross-examination, Investigator Buckley testified that "John Doe" was the name listed on the search warrant. When they executed the warrant, Ms. Miller was the only person present. Investigator Buckley stated that, besides the appointment slip and Ms. Miller's statement, no evidence definitively linked the defendant to the residence. The date and time listed on the appointment slip was September 16, 2009, at 1:45 p.m.

Shauntae Miller, the defendant's sister, testified on behalf of the defendant. Ms. Miller testified that she had lived at 26 Lennon Cove for almost one year, and her name was on the lease. The defendant's name was not on the lease, and she said that he was not living there at the time the investigators executed the search warrant. She said that the defendant had previously stayed at her apartment for a few days, but he had never lived there. She stated that the last time the defendant had stayed with her overnight was in September.

Ms. Miller recalled speaking with Investigator Buckley but denied that he asked her whether the defendant lived at her apartment. According to Ms. Miller, Investigator Buckley asked to whom the men's clothing in the bedroom belonged, and her response was her brother, the defendant. She said that Investigator Buckley also asked her when the defendant was last there, and she replied that he had last been to her apartment approximately one and a half to two weeks before the search. Ms. Miller testified that the defendant lived with their grandmother but would come to her apartment to check on her. The defendant did not pay Ms. Miller any money or assist her with the rent. Ms. Miller said that the gun that the investigators found "in [her] brother's room" belonged to her cousin, Antonio Clark.

On cross-examination, Ms. Miller admitted that she referred to the room in which the investigators found the gun as "[her] brother's room." She agreed that she told Investigator Buckley that the defendant owned the clothes in the bedroom in which Investigator Buckley

-3-

had found the gun. She denied telling Investigator Buckley that the bedroom belonged to the defendant and said she told him that she lived alone.

Ashonna Jackson testified that she was a close friend of the defendant and Ms. Miller. She stated that she was familiar with the gun that Investigator Buckley found because she brought it into Ms. Miller's home. She further stated that the gun belonged to Antonio Clark, and the defendant did not know it was in the home. Ms. Jackson said that, at her own discretion, she went to the police after Investigator Buckley found the gun and told Investigator Buckley the information about which she had just testified.

On cross-examination, Ms. Jackson testified that she got the gun from Mr. Clark for Ms. Miller's protection because Ms. Miller's home had been burglarized several times. Ms. Jackson described the gun as a ".22 two-shot," but she did not know the brand. She stated that she was sure that she got the .22 caliber gun from Mr. Clark and brought it in Ms. Miller's home. She stated that the gun was an automatic two-shot and only had one barrel. Upon further questioning by the prosecutor, Ms. Jackson stated that she did not know much about guns but was sure that the gun that she brought to Ms. Miller's home was a two-shot .22 caliber.

The state called Investigator Buckley as a rebuttal witness. Investigator Buckley testified that the gun that he seized from Ms. Miller's home was a ".9 millimeter Cobra ENT of Utah." Investigator Buckley also found .9 millimeter rounds at the residence. He stated that, to his knowledge, the gun was "a double-barrel single shotgun that you open it in half, load two rounds in the gun, and then fasten the barrel back on."

Based on this evidence, the trial court found that the defendant violated his community corrections sentence. The court did not assign any weight to the defendant's failure to pay cost costs or his alleged possession of a weapon, but it placed significant weight on the defendant's failure to complete his alcohol and drug assessment. According to the court, the defendant's failure in this regard showed "that he just didn't take [his community corrections sentence] seriously [or] attempt to comply." The judge also put weight on the defendant's failure to notify his case officer of his proper address or a change of his address. Consequently, the court revoked the defendant's community corrections sentence and ordered the defendant to serve the remainder of his sentence in the Tennessee Department of Correction.

## Analysis

On appeal, the defendant argues that the trial court abused its discretion when it found that the defendant violated the conditions of his community corrections sentence because

"there was no substantial evidence presented that the [defendant] failed to obtain an [alcohol and drug] assessment when taking into account the short amount of time he was on probation, . . . and there was no substantial evidence presented that the [defendant] resided at 26 Lennon Cove."

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. Tenn. Code Ann. §§ 40-35-310, -311; *State v. Shaffer,* 45 S.W.3d 553, 554 (Tenn. 2001). After finding a violation of probation and determining that probation should be revoked, a trial judge may: (1) order the defendant to serve the sentence in incarceration; (2) cause execution of the judgment as it was originally entered, or, in other words, begin the probationary sentence anew; or (3) extend the probationary period for up to two years. *See* Tenn. Code Ann. §§ 40-35-308(c) & -311(e); *State v. Hunter*, 1 S.W.3d 643, 647 -48 (Tenn. 1999). The decision to revoke probation rests within the sound discretion of the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Pursuant to Tennessee Code Annotated section 40-36-106(e)(4), upon a finding that a defendant has violated the conditions of his agreement, a trial court retains the authority to revoke a defendant's placement in a community corrections program and to cause execution of the original judgment as it was entered. Revocation proceedings for community corrections are conducted pursuant to Tennessee Code Annotated section 40-36-106(3)(B).

Revocation of probation or a community corrections sentence is subject to an abuse of discretion standard of review, rather than a *de novo* standard. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). An abuse of discretion is shown if the record is devoid of substantial evidence to support the conclusion that a violation of probation has occurred. *Id.* The evidence at the revocation hearing need only show that the trial court exercised a conscientious and intelligent judgment in making its decision. *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

The trial court must issue a statement setting forth the evidence and factors relied upon in making the determination to revoke probation. "Unless such determinations are made, . . . fundamental fairness requires that the petitioner remain on probation." *Bearden v. Georgia*, 461 U.S. 660, 674 (1983). The trial court's findings may be written or oral; however, the court must make a statement in some form. *State v. Delp*, 614 S.W.2d 395, 397 (Tenn. Crim. App. 1980).

Here, the trial court stated its reasons for revocation. Specifically, the court stated that the defendant failed to complete his alcohol and drug assessment and failed to notify his case officer of his proper address or a change of address. The testimony was more than adequate to support the trial court's decision. The evidence at the revocation hearing needs to show

only that the trial court exercised a conscientious and intelligent judgment in making its decision. The court accredited the state's undisputed proof that the defendant failed to complete his alcohol and drug assessment despite having been on probation for three months and being able to sign up at his case officer's office. The proof showed that Ms. Miller, the defendant's sister, had men's clothing in a room that she called her "brother's room." Moreover, investigators found the defendant's community corrections appointment slip at the residence. The court obviously accredited Mr. Fuentes's testimony that the defendant did not notify him of any new address. Accordingly, we conclude that the trial court did not abuse its discretion in revoking the defendant's community corrections sentence and ordering the defendant to serve the remainder of his sentence in the Tennessee Department of Correction.

## Conclusion

Based on the foregoing reasons, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE